# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY KINDER,

      Plaintiff,

vs.

NORTHWESTERN BANK,

      Defendant.

_____/

Case No. 1:10-cv-00405-PLM

Hon. Paul L. Maloney

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED by and among Nancy Kinder, individually and on behalf of all others similarly situated, with the assistance and approval of Class Counsel, and Northwestern Bank, with the assistance of its counsel of record, as set forth below.

## INTRODUCTION

This Settlement Agreement is made for the sole purpose of consummating settlement of the Kinder Lawsuit on a class basis. This Settlement Agreement is made in full compromise and release of all disputed claims. Because the Lawsuit was pled as a putative class action, this settlement must receive preliminary and final approval by the Court. Accordingly, the Settling Parties enter into this Settlement Agreement on a conditional basis only. If the Court does not enter the Final Approval Order or if the Final Approval Order does not become Final for any reason, this Settlement Agreement shall be deemed null and void, *ab initio*, and shall be of no force or effect whatsoever (except as provided in paragraphs 2.6(D) and 2.10(D)), it shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms, and entry into this Settlement Agreement shall remain subject to the provisions of Federal Rule of Evidence 408 and any applicable state law(s).

Defendant denies Plaintiff's claims, allegations, and contentions as to liability, damages, penalties, interest, fees, restitution and all other forms of relief and the class action allegations

asserted in the Lawsuit. Defendant has concluded that further conduct of the Lawsuit may be protracted and expensive and that it is desirable that the Lawsuit be fully and finally resolved in the manner and upon the terms and conditions set forth in this Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED** by and among Plaintiff (for herself and the Class Members) and Defendant, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties (including all Class Members), the Lawsuit and the Released Claims shall be finally and fully compromised, settled and released, and the Lawsuit shall be dismissed with prejudice, as to the Settling Parties, upon and subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, the Lawsuit was commenced by Plaintiff, individually and on behalf of the class of persons defined in the Lawsuit and is currently pending and unresolved among the Settling Parties;

WHEREAS, in the Lawsuit Plaintiff alleges that Defendant violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.,* by failing to provide adequate notice of automated teller machine ("ATM") fees;

WHEREAS, in the Lawsuit Plaintiff seeks statutory damages, attorneys' fees, and costs;

WHEREAS, Defendant denies Plaintiff's claims, denies any liability to Plaintiff or the proposed class, and denies any wrongdoing of any kind;

WHEREAS, the Settling Parties agree that it is desirable that the Lawsuit and the claims alleged therein be settled upon the terms and conditions set forth in this Settlement Agreement, in order to avoid further expense and uncertain, burdensome and protracted litigation, and to resolve all claims that have been or could be asserted by Plaintiff or the Class Members;

WHEREAS, the Settling Parties have engaged in extensive arms-length settlement negotiations, and Class Counsel represents that he has otherwise conducted a thorough study and investigation of the law and the facts relating to the claims that have been or might have been asserted in the Lawsuit and have concluded, taking into account the benefits that Plaintiff and the Class Members will receive as a result of this Settlement Agreement and the risks and delays of further litigation, that this Settlement Agreement is fair, reasonable and adequate and in the best interests of Plaintiff and the Class Members; and

WHEREAS, in consideration of the foregoing and other good and valuable consideration, it is stipulated and agreed by and among the Settling Parties that the claims of Plaintiff and the Class Members be and are hereby compromised and settled, subject to the approval of the Court, upon the terms and conditions set forth below.

DEFINITIONS

As used in all parts of this Settlement Agreement, the following terms have the meanings

specified below:

1.1 "ATMs at Issue" shall mean the automated teller machines operated or formerly operated by Defendant at the following locations:

| Branch Name and Address |
|---|
| **Acme**—5300 US-31 North, Acme, MI 49610 |
| **Bay Harbor**—4000 Main Street, Bay Harbor, MI 49770 |
| **Cadillac**—150 Granite Street, Cadillac, MI 49601-2412 |
| **Cadillac N**—1573 North Mitchell, Cadillac, MI 49601-1130 |
| **Charlevoix**—1425 Bridge, Charlevoix, MI 49720-1609 |
| **Elk Rapids**—97 River Street, Elk Rapids, MI 49629 |
| **Gaylord**—711 Main Street, Gaylord, MI 49735-1866 |
| **Gaylord S**—2091 Otsego, Gaylord, MI 49735-9422 |
| **Harbor Springs**—106 East Main, Harbor Springs, MI 49740-1510 |
| **Houghton Lake**—Murphy USA, 2141 West Houghton Lake Road, Houghton Lake, MI 48629 |
| **Houghton Lake**—5213 West Houghton Lake Drive, Houghton Lake, MI 48629-8214 |
| **Interlochen**—2112 M-137, Interlochen, MI 49643-9386 |
| **Kalkaska**—112 South Cedar, Kalkaska, MI 49646-9458 |
| **Kingsley**—111 North Brownson, Kingsley, MI 496349-5103 |
| **Leland**—115 North Main Street, Leland, MI 49654 |
| **Ludington**—101 East Court, Ludington, MI 49431-1777 |
| **Ludington**—Ludington Metal Works, 901 East Sixth Street, Ludington, MI 49431 |
| **Ludington E**—3965 West US-10, Ludington, MI 49431-7613 |
| **Manistee**—325 First Street, Manistee, MI 49660-1701 |
| **Manistee**—Glen's Market, 1057 US-31 South, Manistee, MI 49660 |
| **Northport**—105 East Nagonaba Street, Northport, MI 49670 |
| **Petoskey**—300 Howard Street, Petoskey, MI 49770-2414 |
| **Petoskey**—919 Spring Street, Petoskey, MI 49770-2854 |
| **Suttons Bay**—105 West Fourth Street, Suttons Bay, MI 49682 |
| **Suttons Bay**—212 St. Joseph, Suttons Bay, MI 49682-5103 |
| **Tom's Market**—1144 South Airport Road, Traverse City, MI 49686-4739 |
| **Traverse City**—613 West 14th Street, Traverse City, MI 49684-4049 |
| **Traverse City**—13936 SW Bay Shore Drive, Traverse City, MI 49684-6264 |
| **Traverse City**—625 South Garfield, Traverse City, MI 49686-3425 |
| **Traverse City**—738 Munson Avenue, Traverse City, MI 49686-3525 |
| **Traverse City**—203 South Union, Traverse City, MI 49684-2521 |
| **Traverse City**—4205 US-31 South, Traverse City, MI 49685-7996 |
| **Traverse City**—Glen's Chums Corner, 4144 US-31 South, Traverse City, MI 49684 |
| **Traverse City**—Traverse City Mortgage Center, 107 East Front Street, Traverse City, MI 49684 |
| **Williamsburg**—6353 US-31 North, Williamsburg, MI 49690-9306 |

1.2 "Claim Form" means the form attached hereto as Exhibit A.

1.3 "Class Counsel" means Geoffrey Bestor, Esq.

1.4     "Class Member" means a person who is a member of the Settlement Class.

1.5     "Class Notice" means the notice to be approved by the Court, as set forth in paragraph 2.6 below.

1.6     "Class Period" means April 26, 2009 through May 7, 2010.

1.7     "Class Settlement Administrator" means Class Counsel, who shall process Claim Forms.

1.8     "Court" means the United States District Court for the Western District of Michigan, Southern Division.

1.9     "Defendant" means Northwestern Bank.

1.10    "Effective Date" means the date on which the Final Approval Order becomes Final.

1.11    "Fairness Hearing" means a hearing set by the Court for the purpose of: (i) determining the fairness, adequacy and reasonableness of the Settlement Agreement pursuant to class action procedures and requirements; and (ii) entering a Final Approval Order.

1.12    "Final" means the later of: (i) the date a Final Approval Order is entered by the Court if no objection(s) is filed; or (ii) the date of expiration for the time for noticing a valid appeal from the Final Approval Order if an objection(s) is filed and an appeal is not noticed; or (iii) the date of final affirmation or dismissal of the last pending appeal if an appeal is noticed.

1.13    "Final Approval Order" means an order to be entered by the Court entitled "Final Approval Order," substantially in the form attached hereto as Exhibit F.

1.14    "Northwestern Releasees" means Defendant (and each of its current and former officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents, attorneys, parent and subsidiaries).

1.15    "Kinder" means Nancy Kinder, the Plaintiff in Case No. 1:10-cv-00405, currently pending in the Court.

1.16    "Lawsuit" means the lawsuit styled *Nancy Kinder v. Northwestern Bank,* currently pending in the Court as Case No. 1:10-cv-00405.

1.17    "Opt-Out Deadline" means the date 45 days after entry of a Preliminary Approval Order or other such date as set by the Court.

1.18    "Participating Claimant" means each Class Member who properly and timely submits a Valid Claim Form in response to the Class Notice.

1.19    "Plaintiff" or "Class Representative" means Plaintiff Nancy Kinder

1.20    "Preliminary Approval Date" means the date on which the Court enters a Preliminary Approval Order.

1.21    "Preliminary Approval Order" means an order to be entered by the Court, entitled "Preliminary Approval Order," substantially in the form attached hereto as Exhibit E.

1.22    "Settlement Agreement" means this Settlement Agreement and all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the settlement between them and which is subject to Court approval.

1.23    "Settlement Class" means the conditional class that the Settling Parties have consented to for purposes of settlement only, as described in paragraph 2.1 below.

1.24    "Settlement Fund" means the fund described in paragraph 2.2 below.

1.25    "Settling Parties" or "Parties" means Plaintiff and Defendant.

1.26    "Valid Claim Form" means a Claim Form that is completed, signed under penalty of perjury, and timely returned to the Class Settlement Administrator, postmarked no later than the Opt-Out Deadline. Plaintiff and Defendant shall have the right to verify that each Claim Form submitted is valid in that it reflects use of one of the ATMs at Issue during the Class Period and for which usage the Class Member was charged a transaction fee by Defendant. Either Party challenging any claim shall apprise the other Party of the challenge and the Settling Parties, through their respective counsel, shall meet and confer in good faith in an attempt to resolve any challenged claim. Defendant shall take all necessary actions to make all necessary documents available to verify validity of claims, such as transaction logs for the ATMs at Issue. If the Settling Parties are unable to resolve such a challenge, the Settling Parties shall submit the challenge to the Court for resolution. The Settling Parties shall each bear their own respective costs associated with any such challenge.

## TERMS AND CONDITIONS

2.1    **The Settlement Class.**    Plaintiff and Defendant stipulate to certification of the Class for settlement purposes only, which Class shall be comprised of, and defined as, the following: All persons who, from April 26, 2009 through May 7, 2010 were charged a transaction fee for the use of an automated teller machine operated by Northwestern Bank at any of the following locations:

| Branch Name and Address |
| --- |
| **Acme**—5300 US-31 North, Acme, MI 49610 |
| **Bay Harbor**—4000 Main Street, Bay Harbor, MI 49770 |
| **Cadillac**—150 Granite Street, Cadillac, MI 49601-2412 |
| **Cadillac N**—1573 North Mitchell, Cadillac, MI 49601-1130 |
| **Charlevoix**—1425 Bridge, Charlevoix, MI 49720-1609 |
| **Elk Rapids**—97 River Street, Elk Rapids, MI 49629 |
| **Gaylord**—711 Main Street, Gaylord, MI 49735-1866 |
| **Gaylord S**—2091 Otsego, Gaylord, MI 49735-9422 |
| **Harbor Springs**—106 East Main, Harbor Springs, MI 49740-1510 |
| **Houghton Lake**—Murphy USA, 2141 West Houghton Lake Road, Houghton Lake, MI 48629 |
| **Houghton Lake**—5213 West Houghton Lake Drive, Houghton Lake, MI 48629-8214 |
| **Interlochen**—2112 M-137, Interlochen, MI 49643-9386 |
| **Kalkaska**—112 South Cedar, Kalkaska, MI 49646-9458 |
| **Kingsley**—111 North Brownson, Kingsley, MI 496349-5103 |
| **Leland**—115 North Main Street, Leland, MI 49654 |
| **Ludington**—101 East Court, Ludington, MI 49431-1777 |
| **Ludington**—Ludington Metal Works, 901 East Sixth Street, Ludington, MI 49431 |
| **Ludington E**—3965 West US-10, Ludington, MI 49431-7613 |

| Branch Name and Address |
|---|
| **Manistee**—325 First Street, Manistee, MI 49660-1701 |
| **Manistee**—Glen's Market, 1057 US-31 South, Manistee, MI 49660 |
| **Northport**—105 East Nagonaba Street, Northport, MI 49670 |
| **Petoskey**—300 Howard Street, Petoskey, MI 49770-2414 |
| **Petoskey**—919 Spring Street, Petoskey, MI 49770-2854 |
| **Suttons Bay**—105 West Fourth Street, Suttons Bay, MI 49682 |
| **Suttons Bay**—212 St. Joseph, Suttons Bay, MI 49682-5103 |
| **Tom's Market**—1144 South Airport Road, Traverse City, MI 49686-4739 |
| **Traverse City**—613 West 14th Street, Traverse City, MI 49684-4049 |
| **Traverse City**—13936 SW Bay Shore Drive, Traverse City, MI 49684-6264 |
| **Traverse City**—625 South Garfield, Traverse City, MI 49686-3425 |
| **Traverse City**—738 Munson Avenue, Traverse City, MI 49686-3525 |
| **Traverse City**—203 South Union, Traverse City, MI 49684-2521 |
| **Traverse City**—4205 US-31 South, Traverse City, MI 49685-7996 |
| **Traverse City**—Glen's Chums Corner, 4144 US-31 South, Traverse City, MI 49684 |
| **Traverse City**—Traverse City Mortgage Center, 107 East Front Street, Traverse City, MI 49684 |
| **Williamsburg**—6353 US-31 North, Williamsburg, MI 49690-9306 |

2.2     **Settlement Fund.**   Within three (3) days after the Court enters a Preliminary Approval Order, Defendant shall pay by wire transfer $200,000 into an escrow account (the "Escrow Account") that is mutually agreed to by Class Counsel and Defendant. The Escrow Account shall be established and administered pursuant to an Escrow Agreement substantially in the form attached as Exhibit G hereto. The Escrow Account shall be established in one or more FDIC insured non-interest bearing accounts and administered jointly by Class Counsel and Counsel for Defendant.

2.3     **Disbursement.**   The Settlement Fund shall be disbursed by the Class Settlement Administrator as follows:

A.      Administration Costs.  Class Settlement Administrator shall be reimbursed for expenses reasonably incurred in administering (see paragraph 2.5(D) below) this settlement.

B.      Notice Costs.  Costs of Publication Notice (see paragraph 2.5(A) below) shall be paid from the Settlement Fund as such expenses are incurred;

C.      Payment to Class Representative.  Plaintiff shall receive $2,000 for her individual claim and as an incentive award for her services as Class Representative. Defendant agrees not to object to the Court awarding this amount to Plaintiff. This payment shall be made within 14 days after the Effective Date;

D.      Payment to Class Counsel.  Class Counsel shall receive $80,000 in full satisfaction of all reasonable attorneys' fees and costs.  This payment is subject to Court approval and Defendant agrees not to object to the Court awarding this amount to Class Counsel. This payment shall be made within 14 days after the Effective Date and shall be paid to Geoffrey Bestor, Esq. The Settling Parties agree that Class Counsel's lodestar attorneys' fees and costs currently exceed $80,000 and that an award of $80,000 in attorneys' fees and costs based on Class Counsel's current rates would be fair and reasonable.

E.    Class Recovery.  The amount remaining in the Settlement Fund after deducting the amounts set forth in paragraphs 2.3(A)-(E) above shall be divided pro *rata* among Participating Claimants; provided, however, that no Class Member shall receive payment from the Settlement Fund in an amount that exceeds $250, regardless of whether that Class Member used an ATM at Issue multiple times or used multiple ATMs at Issue.

F.    Cy Pres.  The amount remaining in the Settlement Fund after deducting the amounts set forth in paragraphs 2.3(A)-(F), if any, shall be paid as a *cy pres* award to the following: 30 percent to the Interlochen Summer Arts Camp and 70 percent to the Jerry Lewis MDA/ALS Clinical and Research Center of the University of Southern California Medical Center.

**2.4    Releases.**

A.    Release by Plaintiff and the Class.  Except for the obligations created by this Settlement Agreement, upon the Effective Date, Plaintiff and each Class Member that has not excluded himself or herself from the Class (for themselves and their respective current and former heirs, executors, administrators, controlled companies, partners, employees, assigns, agents, attorneys, parent and subsidiaries) remise, release and forever discharge the Northwestern Releasees from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities of any kind, whether known or unknown that were brought or that could have been brought in the Lawsuit and waive all rights against the Northwestern Releasees with respect to any and all actions, causes of action, claims, counterclaims, breaches, controversies, demands, damages, expenses, losses, costs, attorneys' fees, court costs, loss of income, loss of value or loss of services of any type whatsoever, known or unknown, past or present, whether under foreign or domestic tort or contract law and/or any other foreign or domestic statute, law, regulation, ordinance, certificate of incorporation or by-law relating in any way to the claims made by Plaintiff in the Lawsuit or in any way related to Defendant's alleged failure to provide adequate notice of ATM fees at the ATMs at Issue. This release shall be construed to exclude, and shall not impair, any right, cause of action or claim unrelated to Defendant's alleged failure to provide adequate notice of ATM fees at the ATMs at Issue.

B.    Release by Defendant.  Except for the obligations created by this Settlement Agreement, upon the Effective Date, Defendant (and each of its current and former officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents and attorneys) remises, releases and forever discharges Plaintiff (and each of her respective current and former heirs, executors, administrators, assigns, agents and attorneys) from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities of any kind, whether known or unknown, arising from the investigation, filing or prosecution of the Lawsuit.

2.5    **Class Notice.**  If, by entering the Preliminary Approval Order, the Court provides authorization to publish Class Notice to Class Members, Class Notice shall be published as follows:

A.    Publication.  Class Settlement Administrator shall cause notice to the Settlement Class to be published, within 14 days after entry of a Preliminary Approval Order and in the form and substance set forth in Exhibit B hereto, once each in the following newspaper publications: *Cadillac News*; *Houghton Lake Resorter*; *Ludington*

*Daily News*; *Manistee News Advocate*; *Petoskey News-Review*; and *Traverse City Record-Eagle* . The publication notices shall be at least as large as the rough equivalent of quarter-page display ads, if available in the particular publications.

      B.    Posted Notice. Defendant shall cause notice to the Settlement Class to be posted, starting no later than 14 days after entry of a Preliminary Approval Order and continuing to the Opt-Out Deadline, on each of the ATMs at Issue in the form and substance set forth in Exhibit C hereto. Posted notice does not need to be made on the ATM that was formerly located at 1144 South Airport Road, Traverse City, MI 49686, as that particular ATM no longer exists.

      C.    Website. Plaintiff shall cause notice to the Settlement Class to be posted, starting no later than 14 days after entry of a Preliminary Approval Order and continuing to the Opt-Out Deadline, on the internet at ATMclasssettlements.com in the form and substance set forth in Exhibit D hereto.

      D.    Costs. Class Settlement Administrator shall pay costs of Publication Notice (see paragraph 2.6(A) above) from the Settlement Fund as such costs are incurred. Defendant shall pay costs of Posted Notice (see paragraph 2.5(B) above) in addition to the Settlement Fund but all other costs shall be distributed from the Settlement Fund. If this Settlement Agreement is terminated pursuant to its terms or if the Court does not finally approve this Settlement Agreement, the costs of notice already incurred shall, nonetheless, be borne by Defendant.

**2.6**    **Opt-Out/Exclusion/Right to Object/Participation.**

      A.    Opt-Out/Exclusion. Any Class Member, except Plaintiff, may seek to be excluded from this Settlement Agreement by sending to the Class Settlement Administrator a statement, postmarked no later than the Opt-Out Deadline, stating in substantially the following form: "I WANT TO BE EXCLUDED FROM THE SETTLEMENT CLASS IN *KINDER V. NORTHWESTERN BANK*" The request for exclusion must also contain the excluded Class Member's name, address and signature. Any Class Member so excluded shall not be bound by this Settlement Agreement nor be entitled to any of its benefits.

      B.    Objection. Any Class Member, except Plaintiff, may object to this Settlement Agreement by filing with the Court and sending to Class Counsel and Defendant's counsel, postmarked no later than the Opt-Out Deadline, a statement giving the basis for such objection. The objection must also contain the Class Member's name, address and signature. Any Class Member who exercises her or her right to object to this Settlement Agreement will be responsible for her or her own attorneys' fees and costs. Class Counsel and Defendant's counsel may, but need not, respond to the objections, if any, by filing a memorandum with the Court no later than 5 days prior to the Fairness Hearing.

      C.    Participation. Any Class Member may seek to participate in the Lawsuit. Any Class Member who exercises her or her right to participate in the Lawsuit shall be responsible for her or her own attorneys' fees and costs.

    2.7    **Preliminary Approval Order.** As soon as practicable after execution of this Settlement Agreement, Plaintiff and Defendant shall seek a Court order that:

A.    Preliminarily approves this Settlement Agreement;

B.    Conditionally certifies for purposes of settlement the Settlement Class;

C.    Schedules a Fairness Hearing; and

D.    Approves the form and manner of Class Notice as set forth in paragraph 2.5 herein and finds that such notice satisfies the requirements of due process pursuant to Fed. R. Civ. P. 23, the United States Constitution and any other applicable law and finds that no further notice to the Settlement Class is required.

The Settling Parties agree to request that the Court enter the form of Preliminary Approval Order attached hereto as Exhibit E. The fact that the Court may require changes in the Preliminary Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.8    **Final Approval Order.**  At the conclusion of, or as soon as practicable after, the close of the Fairness Hearing, Class Counsel and Defendant's counsel shall jointly request that the Court enter a Final Approval Order approving the terms of this Settlement Agreement as fair, reasonable and adequate; providing for the implementation of its terms and provisions; finding that the Class Notice given to the Settlement Class satisfies the requirements of due process pursuant to Federal Rules of Civil Procedure, the United States Constitution and any other applicable law; dismissing the claims of Plaintiff and the Settlement Class with prejudice and without costs; and retaining exclusive jurisdiction to enforce the terms and provisions of this Settlement Agreement. Plaintiff and Defendant shall jointly request the form of Final Approval Order, attached hereto as Exhibit F.  The fact that the Court may require changes in the Final Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

### 2.9    Administration of Class Benefits.

A.    Class Settlement Administration.  Class Counsel shall serve as settlement administrator ("Class Settlement Administrator") to process exclusions and Claim Forms. Class Counsel and Counsel for Defendant shall serve jointly as Escrow Agents for purposes of distributing the Settlement Fund as described in paragraphs 2.2 and 2.3 above. Except as otherwise set forth herein, the Settlement Fund shall be distributed within 60 days of the Effective Date, subject to any extension allowed by paragraph 2.9(C) below.

B.    Eligibility.  If the Class Settlement Administrator receives an incomplete or otherwise improperly filled out Claim Form that is otherwise timely submitted, the Class Settlement Administrator shall contact the claimant and seek such information as is needed to correct the deficiency. If the deficiency cannot be corrected by the Class Settlement Administrator, then Class Counsel and Defendant's attorneys shall jointly determine whether the claimant is eligible to receive any of the benefits described in paragraph 2.3, or if they cannot agree upon such a determination in good faith, then the Court shall determine whether the claimant is entitled to the relief requested.

C.    Extension for Distribution.  If the Class Settlement Administrator, in its sole determination, is required to obtain a W-9 form(s) from a Participating Claimant(s), then the Class Settlement Administrator shall have 60 days from the date of receipt of a completed W-9 form to distribute the portion of the Settlement Fund designated for such Participating Claimant(s).

D. Costs. The Class Settlement Administrator shall be reimbursed for expenses reasonably incurred from the Settlement Fund; provided, however, that if this Settlement Agreement is terminated pursuant to its terms or if the Court does not approve this Settlement Agreement, the amount already incurred by the Class Settlement Administrator shall not be refunded to Defendant and shall be paid to the Class Settlement Administrator.

2.10 **Release of Attorney's Lien.** In consideration of this Settlement Agreement, Class Counsel and Kinder's counsel hereby waive, discharge and forever release Defendant from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Class Counsel in connection with the Lawsuit; provided, however, that this release is conditioned upon final approval of this Settlement Agreement by the Court and full performance by the Defendant of its obligations under this Settlement Agreement.

2.11 **No Admission of Liability.** Whether or not this Settlement Agreement is consummated, this Settlement Agreement and all proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession by Defendant of any liability or wrongdoing whatsoever.

2.12 **Best Efforts.** Plaintiff and Defendant and their respective counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the consummation of this Settlement Agreement.

2.13 **Notices.** Notices regarding this Settlement Agreement directed to Plaintiff and/or the Settlement Class shall be sent to:

> Geoffrey Bestor
> 5335 Wisconsin Avenue
> NW, Suite 440
>
> Washington, D.C. 20015
> Phone: 240-463-8503

Notices to Defendant shall be sent to:

> Ronald DeWaard
> Varnum
> Bridgewater Place, P.O. Box 352
> Grand Rapids, MI 49501
> Fax: 616-336-7000

The persons and addresses designated in this paragraph may be changed with written notice to the other signatories hereto.

2.14 **Counterparts.** This Settlement Agreement may be signed in counterparts, in which case the various counterparts shall constitute one instrument for all purposes. The signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies, facsimiles or scanned copies of the signature pages of this Settlement Agreement may be treated as originals.

2.15 **Binding Agreement.** Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Plaintiff and each Class Member and each of their

respective current, former and future heirs, executors, administrators, assigns, agents and attorneys, all of whom/which persons and entities are intended to be beneficiaries of this Settlement Agreement. Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Defendant and each of its current, former and future officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents and attorneys. There are otherwise no third-party beneficiaries of this Settlement Agreement.

2.16 **Representation of Plaintiff and Class Counsel.** Plaintiff and Class Counsel represent that they do not have knowledge or evidence of any ATMs operated by Defendant that allegedly violate the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* other than the ATMs at Issue.

2.17 **Governing Law.** This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to have been wholly performed in the State of Michigan, and the rights and obligations of the Parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of Michigan without giving effect to Michigan choice of law principles.

2.18 **Retention of Jurisdiction.** The Court shall retain jurisdiction to implement and to enforce the terms of this Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

2.19 **Interpretation.** The Settling Parties acknowledge that they have had an equal opportunity to participate in the drafting of this Settlement Agreement and that each Settling Party and its counsel reviewed and negotiated the terms and provisions of this Settlement Agreement and have contributed to its revisions. Therefore, in any dispute over the construction or interpretation of this Settlement Agreement, the Settling Parties agree and understand that the Settlement Agreement shall be construed fairly as to all Settling Parties and shall not be construed against any Settling Party on the basis of authorship. The Settling Parties further agree that in this Settlement Agreement the singular shall include the plural and vice versa where the content so requires.

2.20 **Entire Agreement.** This Settlement Agreement constitutes the entire agreement of the Settling Parties hereto as to the matters raised herein. The undersigned acknowledge that there are no communications or oral understandings contrary to, in addition to, or different from the terms of this Settlement Agreement and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon execution of this Settlement Agreement, superseded and merge into this Settlement Agreement and shall have no effect. This Settlement Agreement may not be amended or modified in any respect whatsoever, except by a writing duly executed by the Settling Parties and their respective counsel.

2.21 **Authority.** The persons signing this Settlement Agreement hereby represent and warrant that they have read this Settlement Agreement, that they know and understand its terms, that they have consulted with counsel with respect hereto, that they have signed this Settlement Agreement freely, and that they intend that they and/or or any person or entity on whose behalf they are signing this Settlement Agreement will be fully bound by all the terms and provisions of this Settlement Agreement. Such persons further represent and warrant that they are competent to sign this Settlement Agreement and that, as necessary, all corporate or other legal formalities have been followed such that they have full authority to execute this Settlement Agreement on behalf of the person or entity for whom or for which they are signing this Settlement Agreement in a representative capacity.

2.23 **Severability.** In case any one or more of the provisions contained in this Settlement Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby.

IN WITNESS WHEREOF, the Parties hereto, have so agreed on the dates noted below.

Date: _June 2_, 2011

Nancy Kinder
Plaintiff and Class Representative

By: _____
    Nancy Kinder

Date: _____, 2011

Northwestern Bank
Defendant

By: _____

    Title:

Approved as to form:

Date: _____, 2011

By: _____/s/_____
    Geoffrey Bestor
    4204 Maple Terrace
    Chevy Chase, MD 20815

    *Class Counsel*

Date: _____, 2011

By: _____/s/_____
    Ronald G. DeWaard
    Varnum
    Bridgewater Place, P.O. Box 352
    Grand Rapids, MI 49501-0352

    *Counsel for Defendant*

2.22 **Headings.** The headings of the several sections and paragraphs hereof are for convenience only and do not define or limit the contents of such sections or paragraphs.

2.23 **Severability.** In case any one or more of the provisions contained in this Settlement Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby.

IN WITNESS WHEREOF, the Parties hereto, have so agreed on the dates noted below.

Date: _____, 2011          Date: ___June 6___, 2011

Nancy Kinder                           Northwestern Bank
Plaintiff and Class Representative     Defendant

By: _____         By: _____
    Nancy Kinder                        Richard Jackson,
                             Title:  Executive Vice President


Approved as to form:

Date: _____, 2011          Date: _____, 2011


By: _____/s/_____                   By: _____/s/_____
    Geoffrey Bestor                     Ronald G. DeWaard
    4204 Maple Terrace                  Varnum
    Chevy Chase, MD 20815               Bridgewater Place, P.O. Box 352
                             Grand Rapids, MI 49501-0352

    *Class Counsel*
                             *Counsel for Defendant*

**Exhibit A**

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

**CLAIM FORM**

**Note: This Claim Form must be completely filled out and submitted on-line (or post-marked, if mailed) to the Settlement Administrator by _____, 2011:**

Settlement Administrator

_____

c/o Nancy Kinder v. Northwestern Bank project

_____

_____

     I affirm under penalties of perjury that I used the Northwestern Bank ATM(s) located at _____ between April 26, 2009 and May 7, 2010 to access and withdraw funds from a personal (not business) account, and was charged a transaction fee for the use of that ATM. I therefore believe I am a member of the Settlement Class described in the class notice and want to receive my share of the Settlement Fund.

Signature: _____

Printed Name: _____

Address: _____

_____

Telephone No. _____

First Four Digits and Last
Four Digits of Card Number
Used in Transaction: _____

Name in Which Account
Accessed by Card Is Held: _____

Name of Financial
Institution that Issued
Card Used in Transaction: _____

**Submission of this Claim Form does not guarantee that you will receive payment, as the information on any Claim Form is subject to validation and verification by Northwestern Bank. If any Claim Form is found to include inaccurate information, no payment will be made to the party submitting the Claim Form. All requested information is necessary to constitute a valid claim.**

## Exhibit B

## NOTICE OF CLASS ACTION SETTLEMENT
*KINDER V. NORTHWESTERN BANK, CASE NO. 1:10-CV-00405-PLM*

**IF YOU USED A NORTHWESTERN BANK ATM BETWEEN APRIL 26, 2009 AND MAY 7, 2010, AND WERE CHARGED A FEE FOR THE USE OF THAT ATM, YOU MAY BE A CLASS MEMBER. THIS SETTLEMENT MAY AFFECT YOUR RIGHTS.**

**VISIT** WWW.ATMCLASSSETTLEMENT.COM **FOR MORE INFORMATION**

This Notice relates to Northwestern Bank ATMs at 35 specific locations in the northwestern part of the State of Michigan. Ms. Kinder sued Northwestern Bank under a law called the Electronic Funds Transfer Act on the grounds that the Bank's ATMs did not have the legally required fee notices posted on the machines advising consumers that they would be charged a fee for the use of the ATMs. Northwestern Bank denies Ms. Kinder's claims but has agreed to a settlement of the case.

This settlement includes everyone who was charged a fee for using the ATMs from April 26, 2009 through May 7, 2010. These people are called "Class Members," and the time period that is covered is called the "Class Period." Under the law, the maximum that a group of people may recover in a case like this one is the lesser of 1% of Northwestern Bank's net worth or $500,000, plus any actual damages that the Class Members suffered, however, Northwestern Bank disputes that the Class could receive any actual damages in this case. Northwestern Bank has stated that there were approximately 127,436 Class Member transactions that were charged ATM fees during the Class Period. Northwestern Bank has agreed to establish a Settlement Fund of $200,000 to settle the case. Class Members may make a claim on the Settlement Fund to receive a pro rata share, up to a maximum of $250. The most an individual filing his own lawsuit could recover is $1,000 plus any actual harm suffered, so the attorneys believe that a settlement allowing Class Members to make a claim for up to $250 is fair and reasonable. The Settlement Fund will also be used to pay: the lawyers who filed the lawsuits their reasonable attorney fee of $80,000; Ms. Kinder $2,000 for her services as a class representative; and the costs of administering the settlement.

On _____, 2011 at _____, the Court will hold a hearing to decide whether to finally approve this settlement. YOU DO <u>NOT</u> NEED TO ATTEND BUT MAY ATTEND IF YOU SO CHOOSE. If the settlement is approved, all Class Members will be bound by the resulting judgment and court orders, and eligible Class Members will be entitled to claim benefits.

You have three choices:

1) If you want to receive your *pro rata* share of the Settlement Fund, up to a maximum of $250, you must submit a completed Claim Form, postmarked by _____, 2010 to the Settlement Administrator at _____. Failure to submit a Claim Form will mean you receive no money but are still governed by a Release of your rights to sue Northwestern Bank for the ATM fee notice claims raised in this Lawsuit. Download a Claim Form at WWW.ATMCLASSSETTLEMENT.COM or call Class Counsel at (240) 463-8503 to request a Claim Form.

2) If you do <u>not</u> want to participate in the Settlement you must write a letter stating, "EXCLUDE ME FROM THE *KINDER V. NORTHWESTERN BANK* SETTLEMENT." Include your name and address and mail the letter to the Settlement Administrator at _____. Your letter must be postmarked by _____, 2011 to be valid.

14

3) If you think the Settlement is unfair, you may object to it by writing a memo stating the specific reasons for your objection and filing it with the Court at B-35 Federal Building, 410 W Michigan Ave, Kalamazoo, MI 49007 on or before _____, 2011 and sending a copy to Class Counsel at 5335 Wisconsin Avenue NW, Suite 440, Washington, D.C. 20015, and to Ronald DeWaard, Varnum, Bridgewater Place, P.O. Box 352, Grand Rapids, MI 49501.

For more information, visit WWW.ATMCLASSSETTLEMENT.COM or contact Class Counsel Geoffrey Bestor at (240) 463-8503.

**DO NOT CONTACT THE COURT FOR INFORMATION, AS IT WILL NOT BE ABLE TO ASSIST YOU**

Exhibit C

# NOTICE OF CLASS ACTION FOR NON-CUSTOMER ATM TRANSACTION FEES

If you were <u>not</u> a Northwestern Bank customer and used this or certain other Northwestern Bank ATM machines anytime between April 26, 2009, and May 7, 2010, and were charged a transaction fee for use of the machine, you may be entitled to compensation pursuant to a class action settlement in the case of *Kinder v. Northwestern Bank*, Case No. 1:10-cv-405.  To find out more, call Class Counsel Geoffrey Bestor at 301-654-2918 or visit www.atmclasssettlements.com.

## Exhibit D

## KINDER V. NORTHWESTERN BANK
## CLASS ACTION SETTLEMENT INFORMATION

Welcome to the settlement information website for Kinder v. Northwestern Bank. This website describes the case and the settlement between Nancy Kinder ("Plaintiff") and Northwestern Bank ("Defendant").

We have tried to design this website to help you get information about the proposed settlement of this case. If necessary, however, for further information you can also contact the Settlement Administrator at:

> GEOFFREY BESTOR, ESQ.
> 5335 Wisconsin Avenue NW, Suite 440
> Washington, D.C. 20015
> Tel. (240) 463-8503
> Email: gbesq@bestorlaw.com

## DO NOT CONTACT THE COURT FOR INFORMATION.

This case is currently pending in the United States District Court for the Western District of Michigan as Case No. 1:10-CV-00405-PLM. The judge is the Honorable Paul L. Maloney. To see a copy of the Complaint, click here.

In the Lawsuit, Plaintiff alleges that Defendant violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693 et seq., by failing to provide adequate notice of automated teller machines ("ATMs") fees at ATMs located in northwestern Michigan. To see a copy of the class action publication notice, click here. To see which ATMs allegedly violated the EFTA, click here.

Defendant denies Plaintiff's claims of wrongdoing but has agreed to settle all claims against it to avoid the expense of continued legal proceedings. To see a copy of the Settlement Agreement, click here.

The Court has certified a class for settlement purposes and preliminarily approved a class action settlement of this case. To see a copy of the Preliminary Approval Order, click here.

The links below provide information about who is a Class Member, the terms of the Settlement Agreement, and how Class Members can participate in, object to, or exclude themselves from, the class action settlement of this case.

## IF YOU ARE A CLASS MEMBER AND FAIL TO OPT OUT OF THIS SETTLEMENT AGREEMENT IT WILL BECOME BINDING UPON YOU. FURTHERMORE, YOU HAVE THE RIGHT TO OBTAIN COUNSEL IN ORDER TO OBJECT.

### All Potential Class Members

To find out if you are a Class Member, click here.

If you want to receive money from the Settlement Fund, click here.

If you do not want to be a Class Member (or receive any money from the Settlement Fund), click here.

If you want to object to the settlement of this case as a class action or to the terms of the Settlement Agreement, <u>click here</u>.

**Exhibit E**

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

This matter coming before the Court on the joint request of the parties for preliminary approval of a Class Action Settlement Agreement and Release, and based upon the papers submitted to the Court and all of the proceedings had in this matter to date, IT IS HEREBY ORDERED:

1. Solely for purposes of settlement, the following Settlement Class is certified pursuant to Fed. R. Civ. P. 23(b)(3): All persons who, from April 26, 2009 to May 7, 2010, were charged a transaction fee for making withdrawal(s) from a personal (not business) account using the following automated teller machines operated by Northwestern Bank:

| Branch Name and Address |
|---|
| **Acme**—5300 US-31 North, Acme, MI 49610 |
| **Bay Harbor**—4000 Main Street, Bay Harbor, MI 49770 |
| **Cadillac**—150 Granite Street, Cadillac, MI 49601-2412 |
| **Cadillac N**—1573 North Mitchell, Cadillac, MI 49601-1130 |
| **Charlevoix**—1425 Bridge, Charlevoix, MI 49720-1609 |
| **Elk Rapids**—97 River Street, Elk Rapids, MI 49629 |
| **Gaylord**—711 Main Street, Gaylord, MI 49735-1866 |
| **Gaylord S**—2091 Otsego, Gaylord, MI 49735-9422 |
| **Harbor Springs**—106 East Main, Harbor Springs, MI 49740-1510 |
| **Houghton Lake**—Murphy USA, 2141 West Houghton Lake Road, Houghton Lake, MI 48629 |
| **Houghton Lake**—5213 West Houghton Lake Drive, Houghton Lake, MI 48629-8214 |
| **Interlochen**—2112 M-137, Interlochen, MI 49643-9386 |
| **Kalkaska**—112 South Cedar, Kalkaska, MI 49646-9458 |
| **Kingsley**—111 North Brownson, Kingsley, MI 496349-5103 |
| **Leland**—115 North Main Street, Leland, MI 49654 |
| **Ludington**—101 East Court, Ludington, MI 49431-1777 |
| **Ludington**—Ludington Metal Works, 901 East Sixth Street, Ludington, MI 49431 |
| **Ludington E**—3965 West US-10, Ludington, MI 49431-7613 |
| **Manistee**—325 First Street, Manistee, MI 49660-1701 |
| **Manistee**—Glen's Market, 1057 US-31 South, Manistee, MI 49660 |
| **Northport**—105 East Nagonaba Street, Northport, MI 49670 |
| **Petoskey**—300 Howard Street, Petoskey, MI 49770-2414 |
| **Petoskey**—919 Spring Street, Petoskey, MI 49770-2854 |
| **Suttons Bay**—105 West Fourth Street, Suttons Bay, MI 49682 |
| **Suttons Bay**—212 St. Joseph, Suttons Bay, MI 49682-5103 |
| **Tom's Market**—1144 South Airport Road, Traverse City, MI 49686-4739 |
| **Traverse City**—613 West 14th Street, Traverse City, MI 49684-4049 |
| **Traverse City**—13936 SW Bay Shore Drive, Traverse City, MI 49684-6264 |

| Branch Name and Address |
| --- |
| **Traverse City**—625 South Garfield, Traverse City, MI 49686-3425 |
| **Traverse City**—738 Munson Avenue, Traverse City, MI 49686-3525 |
| **Traverse City**—203 South Union, Traverse City, MI 49684-2521 |
| **Traverse City**—4205 US-31 South, Traverse City, MI 49685-7996 |
| **Traverse City**—Glen's Chums Corner, 4144 US-31 South, Traverse City, MI 49684 |
| **Traverse City**—Traverse City Mortgage Center, 107 East Front Street, Traverse City, MI 49684 |
| **Williamsburg**—6353 US-31 North, Williamsburg, MI 49690-9306 |

2.  Based on the parties' stipulations, and for settlement purposes only: (a) the class defined is sufficiently numerous such that joinder is impracticable; (b) common questions of law and fact predominate over any questions affecting only individual Class Members, and include whether or not the absence of an externally posted fee notice at the ATMs machine identified above violated the requirements of the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq.; (c) the claim of Plaintiff Nancy Kinder is typical of the Class Members' claims; (d) Plaintiff Nancy Kinder is an appropriate and adequate representative for the Class and her attorney, Geoffrey Bestor, is hereby appointed as Class Counsel; and (e) a class action is the superior method for the fair and efficient adjudication of the claims of the Class Members.

3.  The Court finds that the proposed settlement is within the range of fairness and reasonableness and grants preliminary approval to it. In the event that the proposed settlement is not finally approved for any reason, Defendant shall, pursuant to the Settlement Agreement, retain its right to contest certification of the Class and assert any other defenses that it may wish to raise, whether procedural or on the merits.

4.  The Court approved the proposed forms of notice to the Class, and directs that notice be implemented in accordance with paragraph 2.5 of the Settlement Agreement. Class Counsel will file an affidavit with the Court, at least 5 business days prior to the Fairness Hearing, attesting that notice has been so given.

5.  The Court finds that the notice proposed in paragraph 2.5 of the Settlement Agreement is the only notice to the Class Members that is required and further finds that such notice satisfies the requirements of due process and Fed. R. Civ. P. 23.

6. Class Members shall have forty five (45) days after today's date to send in a claim form, opt out or object to the proposed Settlement Agreement.

7. Any Class Member who wants to receive a monetary portion of the Settlement Fund shall file a Claim Form, which will be available for download at www.ATMclasssettlement.com or by contacting the Settlement Administrator or Class Counsel. To be timely, a Claim Form must be submitted on-line, or mailed to the Settlement Administrator and postmarked, within 45 days after today's date.

8. Any Class Member who desires to exclude herself or herself from the Class shall not be bound by the Settlement and shall not be entitled to any of its benefits. To be timely, a request for exclusion must be sent to the Settlement Administrator and postmarked within 45 days of today's date. To be effective, the request for exclusion must make clear that exclusion is sought by stating: "I WANT TO BE EXCLUDED FROM THE SETTLEMENT CLASS IN NANCY KINDER V. NORTHWESTERN BANK." The request for exclusion must also contain the excluded Class Member's name, address and signature.

9. Any Class Member who objects to the Settlement contemplated by the Agreement shall have a right to appear and be heard at the Fairness Hearing provided that such Class Member files with the Court and delivers to Class Counsel and Defendant's Counsel a written notice of objection together with a statement of reasons for objection, postmarked no later than 14 days before the Fairness Hearing. Class Counsel and Defendant's Counsel may, but need not, respond to the objections, if any, by means of a memorandum of law no later than 5 days prior to the Fairness Hearing.

10. A Fairness Hearing on the fairness and reasonableness of the Settlement Agreement will be held before this Court on _____ at ____ a.m./p.m.

SO ORDERED:

_____

Paul L. Maloney
United States District Judge

21

**Exhibit F**

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

### [PROPOSED] FINAL APPROVAL ORDER

This matter comes before the Court on the joint request of Plaintiff, the Class Members and Defendant for final approval of the Class Action Settlement Agreement and Release (the "Settlement Agreement"), and having considered the papers submitted to the Court and proceedings to date, **THE COURT FINDS AS FOLLOWS:**

(1)     The Court has jurisdiction over the subject matter of this Lawsuit, the Class Representative, the Class Members and Defendant;

(2)  Notice was given to the Class pursuant to paragraph 2.5 of the Class Action Settlement Agreement and Release in this matter;

(3)  The dissemination of Notice, as provided for in the Preliminary Approval Order and the Settlement Agreement, constituted the best practicable notice under the circumstances to all Class Members and fully met the requirements of Fed. R. Civ. P. 23, any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law;

(4) _____ Members of the Settlement Class opted out of the Settlement Agreement;

(5) _____ Members of the Settlement Class objected to the Settlement Agreement;

(6)  The Settlement Agreement is fair, reasonable and adequate.

**THEREFORE, IT IS HEREBY ORDERED:**

A.  That all defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement;

B.  That the Settlement Agreement, including the Limited Release from the Class Members to Northwestern Bank contained therein, is finally approved and the Parties shall implement it pursuant to its terms;

C. That, except as to any person who has timely and effectively requested exclusion from the Settlement Agreement, the Court hereby dismisses with prejudice this Lawsuit, all claims contained therein and all Released Claims;

D. That this Court reserves exclusive and continuing jurisdiction and venue with respect to consummation, implementation, enforcement, construction, interpretation, performance, and administration of the Settlement Agreement or Judgment;

E. That, except as otherwise provided in the Settlement Agreement or herein, the Parties are to bear their own attorneys' fees and costs; and

F. That this Court bars and permanently enjoins all Class Members, except any person who timely and effectively requested exclusion from the Settlement Agreement, from instituting or prosecuting any action or proceeding, whether class or individual, against Defendant for liability based upon the Released Claims.

**SO ORDERED** this ___ day of _____ _____ _____, 2011.

_____
Paul L. Maloney
United States District Judge

**Exhibit G**

**ESCROW AGREEMENT**

THIS ESCROW AGREEMENT is entered into and effective this _____ day of June, 2011, by and among Geoffrey Bestor, Esq., and Varnum, by Ronald DeWaard (jointly the "Escrow Agent"), Nancy Kinder, individually and on behalf of all others similarly situated, by her attorneys; and Northwestern Bank, pursuant to the Class Action Settlement Agreement and Release dated May 27, 2011 (the "Settlement Agreement") (Plaintiff and Defendant are referred to collectively as the "Settling Parties" of the litigation entitled *Nancy Kinder v. Northwestern Bank*, pending as Case No. 1:10-cv-00405-PLM in the United States District Court for the Western District of Michigan ("Lawsuit")). Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings in this Escrow Agreement.

WHEREAS, on May 27, 2011, Plaintiff and Defendant entered into the Settlement Agreement, setting forth the terms and conditions of an agreement to settle and resolve the Lawsuit with finality; and,

WHEREAS, this Escrow Agreement sets forth the terms and conditions of an escrow agreement with respect to certain funds to be deposited by Defendant into an Escrow Account and to be retained therein and distributed therefrom in accordance with the terms of the Settlement Agreement.

NOW, THEREFORE, in consideration of the premises herein, the parties hereto agree as follows:

**I. TERMS AND CONDITIONS**

A. The Settling Parties hereby appoint the Escrow Agent to establish and administer an Escrow Account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

B. Within three (3) days after the Court enters a Preliminary Approval Order, Defendant shall wire to the Escrow Agent a settlement payment in the amount of $200,000 in immediately available United States funds (the "Settlement Fund") pursuant to paragraph 2.3 of the Settlement Agreement. The Escrow Agent shall confirm receipt of the Settlement Fund in writing to the Settling Parties.

C. Escrow Agent shall invest and reinvest the Settlement Fund in one or more FDIC insured non-interest bearing accounts, pursuant to paragraph 2.3 of the Settlement Agreement.

D. The Escrow Agent shall deliver and disburse the Settlement Fund from the Escrow Account as set forth in paragraph 2.3 of the Settlement Agreement. As provided in paragraph 2.9 of the Settlement Agreement, the Settlement Fund shall be finally distributed from the Escrow Account within 60 days of the Effective Date, subject to any extension allowed by paragraph 2.9(C).

E. Following receipt of written notice signed by Class Counsel and Defendant's counsel stating that the Settlement Agreement has not been approved by the Court or the Settlement Agreement has been terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse the Settlement Fund to Defendant net of taxes paid

24

or due with respect thereto, any fees or costs paid or incurred for administration of the Escrow Account, and costs/expenses paid by or incurred to the Escrow Agent.

## II. PROVISIONS AS TO THE ESCROW AGENT

A. This Escrow Agreement, and those provisions of the Settlement Agreement incorporated by reference herein, expressly and exclusively set forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent.

B. This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow. Unless it is signed by the Escrow Agent as a party, no other agreement including the Settlement Agreement shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof.

C. The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

D. The Escrow Agent shall be protected in acting upon any document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Settlement Fund.

E. In the event of any disagreement among any of the parties to this Escrow Agreement, or among any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Escrow Agreement, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the Court, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Escrow Agent shall have been notified thereof in writing signed by all such parties.

F. The Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by the Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

G. The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto. Such resignation shall be effective not fewer than thirty (30) days after such written notice has been given. In the

event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, the Escrow Agent shall be entitled to tender into the custody of the Court all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent. Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I above.

H. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the Western District of Michigan for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

## III. COSTS INCURRED BY ESCROW AGENT

A. The Escrow Agent shall be entitled to reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Escrow Agreement, and such reimbursement shall be paid exclusively from the Settlement Fund.

B. The Escrow Agent shall reimburse the Class Settlement Administrator for latter's reasonable costs and expenses incurred in connection with the performance by it of services under the Settlement Agreement, and such reimbursement shall be paid exclusively from the Settlement Fund.

## IV. SECURITY INTEREST

A. Defendant hereby assigns and grants to Plaintiff and her successors and assigns, for the benefit of Plaintiff, Plaintiff's Counsel, and the Settlement Class, a security interest in all of Defendant's right, title and interest in the collateral (the Escrow Account, including any accrued interest thereon), subject to the terms and conditions of this Escrow Agreement, to secure Defendant's indebtedness to Plaintiff, Plaintiff's Counsel, and the Settlement Class. Plaintiff shall have all the rights of a secured party pursuant to the Michigan Uniform Commercial Code, even if the Escrow Account is not otherwise subject to such Code concerning security interests, and the parties to this Escrow Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Escrow Agreement. To the extent an account number is necessary to perfect Plaintiff's security interest by filing with the State of Michigan, the parties agree that the financial institution and account number of the Escrow Account may be obtained and entered in the following space upon establishing of the Escrow Account: _____ _____ _____ _____ __ ___ _____ _____.

B. The Escrow Account will not be subject to deduction, set-off, lien or other right in favor of any other person or entity other than Plaintiff, Class Counsel, and/or the Settlement Class, except that Escrow Agent may deduct or set-off all amounts due to the Escrow Agent pursuant to Article III of this Escrow Agreement and/or paragraphs 2.3(A), 2.3(B), 2.6(D) and 2.10(D) of the Settlement Agreement.

C. Upon Defendant going into receivership, being taken over or being shut down by any governmental agency or other financial institution, if at such time the proceeds of the

Escrow Account have not been distributed to Plaintiff, Plaintiff's Counsel, and the Settlement Class, Plaintiff may exercise or attempt to exercise any rights Plaintiff may have as a result of the security interest granted to Plaintiff in this Article IV, in addition to any rights and remedies available to Plaintiff under this Escrow Agreement and/or the Settlement Agreement.

## V.   MISCELLANEOUS

A. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows. Monthly or other scheduled statements of or reports on the Escrow Account shall also be forwarded to these addresses by the Escrow Agent:

If to Escrow Agent:

Geoffrey Bestor
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015
Re: Escrow Account: Kinder v. Northwestern Bank Settlement Fund

AND

Ronald DeWaard
Varnum
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501
Re: Escrow Account: Kinder v. Northwestern Bank Settlement Fund

If to Plaintiff or Class Counsel:

Geoffrey Bestor
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

If to Defendant:

Ronald DeWaard
Varnum
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

B. This Escrow Agreement is being made in and is intended to be construed according to the laws of the State of Michigan. It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns. All representations, covenants, and indemnifications contained in this Agreement shall survive the termination of this Escrow Agreement.

C. The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

D. If any provision of this Escrow Agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

E. All titles and headings in this Escrow Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

F. This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

G. This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

Nancy Kinder

_____          Date: ___/_____/_____

Northwestern Bank

_____          Date: ___/_____/_____

By:
Title:

GEOFFREY BESTOR

_____          Date: ___/_____/_____

VARNUM

_____          Date: ___/_____/_____

Ronald DeWaard

28