UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| NANCY KINDER, individually and o/b/o all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-405 |
| v. | ) ) | Honorable Paul L. Maloney |
| NORTHWESTERN BANK, | ) ) | |
| Defendant. | ) ) ) | **REPORT AND RECOMMENDATION** |

This is a certified class action brought by a consumer under the Electronic Fund Transfer Act (EFTA).  Plaintiff brings suit against defendant Northwestern Bank for violation of the notice requirements concerning fees charged for the use of the bank's automatic teller machines (ATMs), embodied in 15 U.S.C. § 1693b(d)(3)(B).  By opinion and order issued November 2, 2011 (docket # 44), Chief Judge Paul Maloney granted class certification for the purposes of settlement. The order referred to me for issuance of a report and recommendation the question of the fairness of the proposed settlement, including the fairness of the attorney's fee award.  (Op. & Order, pp. 15-16, docket # 44).

After issuance of Chief Judge Maloney's opinion and order, I directed plaintiff to file records and affidavits establishing the reasonableness of the requested attorney's fees.  (Order, docket # 46).  Plaintiff's counsel complied with that direction.  By subsequent order, I directed the parties to file briefs addressing the fairness of the method of notice proposed for informing absent

class members of the pendency of this case. The parties complied with that order, and the matter is now ready for decision.

### Relevant Terms of Settlement

The EFTA requires that any financial institution charging a fee for the use of its ATMs post a notice "in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer." 15 U.S.C. § 1693b(d)(3)(B). The Act prohibits financial institutions from charging a fee for the use of a its ATM where a notice is required but not disclosed as required by law. *Id.* at § 1693b(d)(3)(C). Plaintiff reads the EFTA as requiring the notice to be posted by a sticker affixed to the face of the ATM, regardless of the fact that the consumer receives actual notice of the fee by on-screen notification. Defendant answered the complaint, asserting that a customer's receipt of actual notice by on-screen notification vitiates any cause of action under the EFTA. Plaintiff Nancy Kinder alleged that she was charged a fee on fifteen separate occasions for use of ATMs maintained by the defendant bank in various locations in Northern Michigan. (Compl., ¶ 15). Her complaint proposed to represent a class of persons who were charged a fee at an ATM operated by the defendant bank where no notice indicating that a fee was to be charged was posted on the outside of the ATM machine. (*Id.*, ¶ 20).

On June 9, 2011, the parties submitted a joint motion for certification of a settlement class and for preliminary approval of a settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The terms of the proposed settlement are set forth in a document entitled "Class Action Settlement Agreement and Release." (docket # 41-1). The settlement class to which the agreement applies is composed of all persons who, from April 26, 2009 through May 7, 2010, were

-2-

charged a transaction fee for the use of an ATM operated by defendant bank at specified locations. (¶ 2.1). The agreement establishes a settlement amount of $200,000.00, of which $80,000.00 is allocated to plaintiff's attorney's fee. The fund would also be expended for administration and notice costs, and a $2,000.00 award to the named plaintiff. The remaining fund would be divided pro rata among participating class members, provided that no class member would receive an amount exceeding $250.00. Any unclaimed amount would be awarded to two charities under a *cy pres* provision of the agreement. (¶ 2.3). In exchange for this payment, Northwestern Bank would be released from all liability arising from the bank's failure to provide adequate notice of ATM fees at the locations at issue. (¶ 2.4).

The settlement agreement proposes to give notice to class members in three ways: (a) publication in six newspapers of general circulation in Northern Michigan, in a size roughly equivalent to a quarter-page ad; (b) a notice posted on each of the subject ATMs; and (c) an Internet notice posted on a site called "ATMclasssettlements.com." (¶ 2.5). The agreement contains opt-out provisions consistent with Fed. R. Civ. P. 23 and other features that do not bear directly on the question of fairness.

### Discussion

Rule 23(e) of the Federal Rules of Civil Procedure provides that the claims and defenses of a certified class action may be settled only with the court's approval. The rule requires that the court direct notice "in a reasonable manner" to all class members who would be bound by the proposal and that the court conduct a hearing on the fairness of the proposed settlement, after the absent class members have been given notice and an opportunity to lodge objections. Consequently,

the task before the court at present is to review the proposed settlement for fairness in a preliminary fashion, understanding that final review must await the notice and objection process.

This report and recommendation addresses three aspects of the proposed settlement. The first is the method by which absent class members are notified of the action and its settlement. The second is the proposed payment to class members. The third is the attorney's fee allocated to plaintiff's counsel.

A.    Method of Notice

Rule 23 requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). As a matter of procedural due process, personal notice to absent class members is required, and is not merely discretionary, when the identities of class members are known. *See Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 173-74 (1974). Publication notice will not satisfy due process when names and addresses are known. *Id.* at 174. Neither Rule 23 nor due process, however, requires actual notice to each party intended to be bound by the adjudication of a class action. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). Rather, notice must be reasonably calculated to reach interested parties. *Id.*

The proposed method for notifying absent class members does not include notification by first-class mail, but relies on publication in area newspapers, physical posting of a notice on the subject ATMs, and notice on a dedicated website. In support of the proposed method, the parties have submitted five affidavits (docket # 52-1), which establish the extreme difficulty of determining the identity of individual class members in the circumstances of this case. Fees for ATM use are charged only to persons who are not regular customers of defendant Northwestern

Bank. (Zernow Aff. ¶¶ 3-4, ID# 622). Thus, by definition, the names and addresses of class members are not known to the defendant bank, as the bank has no relationship with these individuals. When a non-customer executes an ATM transaction, the bank receives "a very limited amount of data." (*Id.* ¶ 11, ID# 623). This information does not include the name, address, or any other personal identifying information concerning the person who used the bank's ATMs. (*Id.* ¶ 12). The other affidavits confirm that this is the typical situation faced by any bank that uses the MasterCard/Sirrus network or the NYCE network for sharing electronic fund transfers among banks. Only the banks at which absent class members maintain their accounts would be in a position to identify individuals. In the present case, over 125,000 transactions are at issue, involving over 46,000 unique ATM card numbers. (Zernow Aff. ¶ 15, ID# 623). The parties would therefore face a monumental task in identifying individual class members, which could easily expend more in costs than the settlement amount.

The parties have cited cases brought under the EFTA in the Eastern District of Michigan, and in other courts, in which these facts have led the court to find that both Rule 23 and the requirements of due process are satisfied by the kind of publication notice suggested herein, given the extreme difficulty of identifying individual class members by name and address. *See, e.g., Kinder v. Dearborn Fed. Sav. Bank*, No. 5:10-cv-12570, 2011 WL 6371184, at * 4 (E.D. Mich. Dec. 20, 2011); *Burns v. First Am. Bank*, No. 04 C 7682, 2006 WL 3754820, at * 11 (N.D. Ill. Dec. 19, 2006). Individual notice is required only when names and addresses can be identified through reasonable effort. Here, such an identification is a virtual impossibility. I am satisfied that the proposed method of notification, although not likely to reach a significant number of class members, is reasonable and represents the best notice practicable in the circumstances.

**B.**     **Fairness of Settlement Payment**

The EFTA contemplates both individual and class actions for damages arising from violations of the Act's substantive provisions.  A consumer, or class of consumers, may seek actual damages sustained as a result of a violation of the Act.  15 U.S.C. § 1693m(a)(1).  The great weight of authority holds, however, that recovery of actual damages under this provision requires a showing of detrimental reliance by each plaintiff or class members.  *See Vallies v. Sky Bank*, 591 F.3d 152, 161 (3d Cir. 2009) (collecting cases).  Actual damages are clearly not available to plaintiff, who searched Northern Michigan specifically for ATM machines without an external notice, for the express purpose of bringing a lawsuit.  She cannot possibly show detrimental reliance.  Nevertheless, statutory damages in an amount not less than $100.00 nor greater than $1,000.00 are available to individual consumers, without proof of such detriment reliance.  15 U.S.C. § 1693m(2)(A).  In the case of a class action, no minimum recovery is applicable, and the total recovery is capped at the lesser of $500,000.00 or one percent of the defendant's net worth.  *Id.* at § 1693m(2)(B).

The settlement agreement contemplates a pro rata sharing of the settlement fund among all absent class members, with a ceiling of $250.00 each.  Because very few class members will likely respond, the probability is that each responding class member will receive the maximum payment of $250.00.  The proposed settlement is well within the allowable range for the award of statutory damages.  Given the fact that the ATM charge imposed by the defendant bank, allegedly contrary to law, was at most $3.50, the proposed award of $250.00 per class member is more than remunerative of any actual loss suffered.  Plaintiffs have good reason to compromise for an amount less than the maximum statutory allowable award.  A favorable outcome for plaintiff is far from guaranteed.  In *Clemmer v. Key Bank National Association*, 539 F.3d 349 (6th Cir. 2008), the Sixth

Circuit held that an on-screen ATM notice stating that a fee may be charged for a transaction provided adequate notice under the EFTA. Although the precise issue framed by the present case -- whether the EFTA requires notice posted on the face of the ATM machine, as opposed to an on-screen notice -- was not directly addressed by *Clemmer*, the case could be read as authority contrary to plaintiff's present position. No controlling case directly supports plaintiff's reading of the EFTA. Consequently, it is in the interest of both plaintiff and her class to enter into the compromise set forth in the settlement agreement, rather than risking an unfavorable result.

In summary, initial review of the terms of settlement discloses no apparent unfairness concerning the amount of settlement.

### C.    Attorney's Fees

Judge Maloney's previous opinion and order noted that the $80,000.00 attorney fee reserved for class counsel represents forty percent of the total settlement fund of $200,000.00. The court observed that that amount exceeds the percentage class counsel received in similar suits settled in the Eastern District of Michigan, in which plaintiff's counsel received approximately twenty-five percent of the settlement fund. As a result of this disparity, the court directed counsel to justify the proposed award. In response, counsel filed a brief, supported by his affidavit and records concerning time expended. (docket # 47).

Plaintiff's counsel correctly points out that the EFTA is a fee-shifting statute, allowing imposition on defendant of a reasonable attorney's fee, as well as costs. 15 U.S.C. § 1693m(a)(3). Counsel asserts that the settlements in the other EFTA actions cited by Judge Maloney included an attorney's fee awarded under a "common fund" theory, rather than under the fee-shifting

provisions of the Act. The common fund, or "percentage of recovery" approach applies a certain percentage to the settlement fund, while an award of fees pursuant to statute begins with the computation of a "lodestar" (reasonable hourly rate times reasonable number of hours worked). *See Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011); *accord Van Horn v. Nationwide Property & Cas. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). Contrary to the suggestion in plaintiff's brief, the mere fact that the EFTA is a fee-shifting statute does not require use of the lodestar approach. The district court generally has discretion to select the more appropriate method for calculating attorney's fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Id.* In fact, the Court of Appeals allows a district using the lodestar method to "cross-check" the reasonableness of the result by resort to the common fund method. *See Van Horn*, 436 F. App'x at 501; *Sullivan*, 667 F.3d at 330. The cases cited by Judge Maloney in his order were also EFTA cases, yet the courts decided to award a fee of twenty-five percent of the fund.

Plaintiff's counsel has submitted time records in support of a lodestar award. Those records show that from March 2, 2010, through November 30, 2011, plaintiff's counsel worked a total of 255 hours on this case. (Bestor Aff. ¶ 9, docket # 47-1). Counsel estimates that a total of 290 hours will be expended through resolution of the case. A fee of $80,000.00 for 290 hours work yields an hourly rate of $275.00. This hourly rate is reasonable for an attorney of Mr. Bestor's experience and standing and is in line with the State Bar Economics of Law Practice Survey (2011) and recent fee award approved by judges of this court. (*See* Plf. Brief at 5-6, docket # 47).

The hours expended, however, are more than problematic. Two hundred ninety hours represents over seven solid weeks of time, at forty hours per week. In the aggregate, this appears to represent an excessive expenditure of time on a single-issue case, involving no factual disputes, and governed by a very finite body of legal authority. This conclusion is reinforced by the fact that plaintiff's counsel has handled over thirty "ATM notice" cases. This experience must necessarily translate into economies of scale. For example, drafting the thirtieth complaint should require minutes, not hours, and the research necessary to make or defend a dispositive motion should be minimal. One reason that experienced attorneys can command a high hourly billing rate is the attorney's presumed efficiency in handling familiar legal issues.

A preliminary review of time records confirms that the hours claimed by counsel are unreasonably high. Counsel's time records (ID#s 556-558) are barely three pages long and lack the detail generally required to support a significant fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "To establish that he is entitled to reimbursement for particular items of attorney's fees . . . the fee petitioner must provide the court with the attorneys' billing records that describe the work performed *in sufficient detail* to establish that the work is reasonably related to [the litigation]." *In re Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999) (citations omitted, emphasis added). Inadequate documentation "makes it impossible to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given task." *Id.* The requirement of specificity is more important where, as here, counsel is handling a number of substantially identical cases. Thus, vague time entries such as "telecon local counsel," "emails with defense counsel," and "emails re settlement" are plainly insufficient. *See Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005). Likewise objectionable is block billing, when two or more

tasks are lumped together.  This practice makes it impossible to tell how much time has been devoted to a specific task.  (*E.g.*, "prep for and Kinder depo" (6.0 hrs 10/6-7/10); "review discovery responses; prep for depositions; telecons, emails re same and settlement" (6.5 hrs. 11/17/10)).  Plaintiff's counsel, as an experienced plaintiff's attorney who regularly petitions for fees, should be expected to document his time with a far greater level of detail.

To the extent that plaintiff's time records display sufficient detail, the hours claimed are often grossly in excess of the time that an attorney with thirty years' experience should reasonably have expended.  The following time entries stand out:

- *Drafting complaint*.  Counsel claims 5-1/2 hours for drafting the complaint (3/22, 3/24, and 4/26/2010).  The complaint is barely ten pages long.  Most of the complaint is devoted to boilerplate concerning the EFTA and class-action allegations.  Most significantly, the complaint is substantially identical to the class-action complaint filed in *Harrison v. Flagstar Bank*, case no. 5:09-cv-12687 in the Eastern District of Michigan.  The complaint is also substantially similar, and in most respects a verbatim copy of, the complaint filed in *Harrison v. Independent Bank*, case no. 5:09-cv-12684, again in the Eastern District of Michigan.  And, the complaint is substantially similar to complaints filed in this court by the same counsel shortly after the present case was filed.  *See, e.g., Kinder v. Mainstreet Savings Bank*, case no. 1:10-cv-621.  These complaints are apparently created by the use of a template, in which the introductory allegations concerning the EFTA and the concluding allegations concerning class-action status are repeated verbatim; the only material differences appear under the heading "Facts Related to Plaintiff's Transaction" and

-10-

are stated in a single paragraph. It is inconceivable that a lawyer could possibly spend over five hours modifying the template for use in this case.

- *Rule 16 Scheduling Conference*. The time entries from July 9 through July 20, 2010, claim 9.9 hours in connection with a telephone scheduling conference conducted on July 20, 2010. Of this time, counsel claims 1.9 hours in telephone calls and e-mails with plaintiff's local counsel, 4.2 hours in drafting the joint status report and exchanging e-mails with defense counsel, and 3.5 hours in preparing for participating in the status conference. According to the court's minutes (docket # 11), the conference itself consumed 28 minutes. Preparation for the conference requires that the attorneys discuss deadlines for the close of discovery, motion practice, and other enumerated subjects and then submit a joint status report. The joint status report is virtually a fill-in-the-blanks form. The report in the present case (docket # 10) is four pages long. Under no reasonable scenario could the process of drafting the joint status report in a case like this consume 4 hours. Likewise, no reasonable attorney could possibly spend in excess of 3 hours preparing for a 28-minute telephone scheduling conference. The process of conferring with opposing counsel and putting together the joint status report involves all the preparation necessary for participation in the conference, at which no substantive issues are ever discussed or resolved.

- *Kinder deposition*. Counsel's timesheet shows the expenditure of up to 17 hours in preparing for and sitting in on the deposition of Nancy Kinder, plaintiff. The entry for October 3, 2010, claims 4.5 hours in preparing for the deposition, in telephone calls on the same subject, and in research on the duties of a class representative.

Because of the block billing technique employed by counsel, it is not possible to determine how much time was spent on each task, but it is reasonable to assume that the deposition preparation consumed most of the time. The entry for October 5, 2010, claims 6.5 hours in preparing for the Kinder deposition, and the entry for October 6 claims another 6 hours in preparing for and sitting in on the deposition. The record does not contain a transcript of the deposition or any other means by which to determine how long it lasted. Nevertheless, counsel claims over 6 hours in preparing for the deposition of his client. Without much more detail and explanation, this appears to represent an unreasonable expenditure of time.

- *Motion for Class Certification*. The entries for October 14 and 15, 2010, claim as much as 15.5 hours for drafting the motion for class certification. Again, counsel has "block billed" this time along with time spent in sending e-mails to someone concerning additional discovery, so it is not clear how many of the 15.5 hours were devoted to briefing the motion for class certification. Even assuming that each e-mail consumed an hour, this leaves over 13 hours devoted to an 8-page motion for class certification, the vast majority of which was dedicated to boilerplate discussion of the standard Rule 23 issues. Expenditure of over 13 hours on a motion of this length and simplicity is not reasonable.

- *Settlement Agreement*. Counsel claims as much as 33.2 hours in drafting, revising, and "finalizing" the settlement agreement and in drafting the motion for its approval. (*See* entries of 3/23, 3/24, 3/25, 4/18, 4/19, 4/20, 5/4, 5/16, 5/17, 5/18, 5/22, 5/23, 5/26, 5/27, 6/2, 6/7, 6/8, and 6/9 of 2011). This is in addition to time claimed for e-

-12-

mails and correspondence on the same subject. The text of the settlement agreement (docket # 44-1) is 12 pages long, plus attachments. The joint motion is 5 pages long. In the motion for a hearing on the proposed settlement, plaintiff's counsel represented to the court as follows:

> Plaintiff notes that the parties' proposed settlement is identical in all material respects to ATM fee class action settlements that have recently received both preliminary and final approval from the Court's sister court in the Eastern District of Michigan.

(Request for Hearing, docket # 43, ID# 522). The motion then lists four cases in the Eastern District. Comparison of the proposed settlement in the present case with the settlement agreements reached in the four Eastern District cases confirms that the documents are indeed "identical in all material respects." The agreements seem to involve use of a template, with only minor variations. In light of this, it is impossible to discern how modifying the preexisting agreement in the minor ways necessary to reflect the terms of settlement in this case could ever consume over 30 hours of attorney time.

Further examination of the time records discloses similar anomalies with regard to other entries, but no useful purpose would be served in chronicling them here. The point is that this is one of dozens of similar cases that involve the same legal and class action issues. The real time expenditure, and legal work, is necessarily expended in the first one or two cases. Thereafter, handling such litigation involves an assembly-line, cookie-cutter approach. Complaints, motions for class certification or summary judgment, and settlement documents are demonstrably similar and should involve no substantial additional expenditure of time. Although the lodestar approach might

-13-

well be appropriate in the first one or two cases in such a series (because these cases require the greatest expenditure of time and effort by counsel), that method appears to be inappropriate in subsequent cases, in the absence of unusual circumstances.  In the present case, the fee application suffers from manifest difficulties, as noted above, but there is no adversarial process by which to resolve these questions.  The defendant, which cares only about the gross amount of the settlement, has no incentive to challenge counsel's fee application.  This puts the court in the awkward position of conducting an inquisitorial proceeding into the reasonableness of counsel's fee application, unaided by the normal adversarial presentation.  In these circumstances, a percentage of the fund award, consistent with recent awards in similar cases, is a superior method of assuring fairness to both the class and class counsel.

In summary, I conclude that the fee application in this case is based on a facially excessive and unreasonable claim for hours expended.  In these circumstances, a percentage of the fund approach is more reasonable and equitable.  I therefore recommend that the court preliminarily approve a twenty-five percent recovery, or $50,000.00, for counsel, subject to final approval after the objection period has closed.

**Recommended Disposition**

I recommend that the proposed settlement be preliminarily approved pursuant to Fed. R. Civ. P. 23(e), except for the requested attorney's fee.  In that regard, I recommend preliminary approval of a $50,000.00 attorney fee, representing twenty-five percent of the fund created by the settlement.  Counsel should be directed to submit revised versions of the Notice of Class Action Settlement (Settlement Agreement, Ex. B, ID#s 505-06) and Preliminary Order of Approval (Ex. E, ID#s 510-12).  The court should also establish a date for filing objections and a date for the Fairness Hearing.


Dated:   June 5, 2012                                    /s/  Joseph G. Scoville
                                                         United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).